I would like to reserve one minute for rebuttal. Because of the court's admonition at the beginning of this morning's session, I would like to just focus on the first issue in our blue brief, which focuses on the question of whether the district court erred in denying the defendant's motion for an evidentiary hearing on the issue of our claim of the adequacy of counsel. In Bauman v. United States, this circuit held that in interpreting section 2255, this provision means that an evidentiary hearing shall be granted unless the motion in the files and records in the case conclusively show that the prisoner is entitled to no relief. And Bauman also stated that a hearing must be awarded unless, viewing the petition against the records, its allegations do not state a claim for relief or are so palpably incredible or so patently frivolous or false as to warrant summary dismissal. Well, it seems to me it's a well-written case. Indeed it is. And the problem that we have in this case is that we have competing affidavits, most notably on the question of why this witness, Renee Scarlett, was not called as a witness. But the district judge decided the case based upon the affidavits. And his statement is, it is difficult to conceive of what motive Mr. Storko would have had for sending away his most favorable witness unless she told him her testimony would damage the defendant. Now, if that stands up, then we affirm. But you're saying that was an erroneous comment, that he can't make that statement. For the reason that? For the reason that he can't make a factual determination based on the affidavits as to who's telling the truth here. And he can't assume that counsel was acting reasonably under the circumstances. Because our whole point here is that counsel was not acting reasonably, that he did not have a rational basis for... But this case is one level forward, I think, from Bell and most of the other cases, because there is evidence. We're not just dealing with allegations. We're dealing with some evidence in the record, but not face-to-face hearings. So the question is, what is going to be served by the face-to-face hearing that wasn't served by the declaration? And I assume it's cross-examination, basically. Correct. Cross-examination and actually hearing from this witness, Renee Scarlett. Well, Renee Scarlett, we don't know what she's ever going to hear from. Well, I don't really... I thought they tried to find her and couldn't. Well, we know where she is. We couldn't pin her down for an interview, and we couldn't get her to sign an affidavit. But Wendy Kunkel, our investigator, in her affidavit states that she knows where she is. I see. So it's just a peanut question. If you had a hearing, you could get her in. Sure. It's more than just cross-examination. And she showed up for the first trial, so I think it's reasonable to conclude that she would show up again if subpoenaed, if ordered to show up. So, in other words, the logical inference that he made here about who was probably telling the truth, even if he... it wouldn't be sufficient because there is actually somebody else who has evidence, and that person won't appear unless subpoenaed. That's the short of it. Right. Right. But there was no... nothing was submitted to the district judge relating to the views of Ms. Scarlett. Nothing... no affidavit of Ms. Scarlett. No direct affidavit. The appellant submitted his view. She told me such and such. The lawyer submitted his view. I met with her, and she wasn't going to help. So, I understand normally there has to be a hearing, you know, unless the record conclusively establishes there's no entitlement to relief. But is there a subset of cases where a district judge can make a credibility determination on affidavits in a rare case, like here, where he just says, look, the lawyer has no reason to be making up a story, and he just... it's a shortcut, but he just doesn't hold a hearing? I thought there were some cases where we had permitted that, and I don't know if this fits in that category. Well, I think the Shaw case that's cited in both briefs fits into that category. It's not as though the court can never decide credibility issues. However, it's only where the record, as it stands with the affidavits and other portions of the record, the trial record and so forth, conclusively show that somebody in their affidavit is not telling the truth. And in the Shaw case, it was a situation where the defendant was coming in and saying, I did not make a voluntary intelligent waiver of my right to trial, et cetera, et cetera. My attorney didn't advise me of certain things. And it was clear on the record that he was not telling the truth because, in fact, he had been advised of certain things. I'm sort of paraphrasing. But I think that's a situation where a court can rely upon affidavits to say, I don't believe this person, but where it's the defendant and the counsel giving conflicting accounts as to why this witness was sent away, as in this case. I think an evidentiary hearing is necessary. And you were indicating there was at least some possibility you would get Miss Scarlett under a subpoena for hearing? What I'm saying is the district court. The reason for my question is this. It seems that if the lawyer and the appellant are before the district judge in a hearing, there's really not any reason to think that even brilliant cross-examination is going to lead to any different conclusion by the district judge. I don't think that. Unless there's some reason that why the lawyer would be making something up. I mean, I guess that's the question. Well, I disagree with that analysis. I disagree. I don't think it's proper to say, well, the judge is going to come to the same result anyway based on who these witnesses are and so forth. But to perhaps answer your question a little differently, if the court is wrestling with the question of why would counsel have sent this witness away, I can certainly come up with other plausible explanations. He sets out in his affidavit other concerns that he had about her credibility before trial even began. He was concerned that because she's a methamphetamine user, perhaps she would not testify truthfully or she would be unreliable. I think he said some other things about his questions about her validity or viability as a witness. And so it's quite possible that he just, moments before calling her as a witness, had a change of heart. Those would all be tactical decisions, which probably would not lead to a stricken conclusion. I'm sorry. Those would all be tactical decisions that would not lead to a stricken conclusion. But not if he already said in his opening statement that he was going to call this witness. And that's the problem. I mean, if he's going to make this decision that this witness is not a good witness, he's got to make that before trial, before he tells the entire jury, this is what this witness is going to say, this is my star witness who's going to get my client on. And that's the problem that we're seeing. I suppose what the government's going to tell us is that the Ninth Circuit, partly relying on the Supreme Court in March and Roda, said that we can, the judge can use his common sense. And that the district judge says it's difficult to conceive what motive Mr. Storkin would have. And he will argue, I suppose, that that shows the district judge was using his common sense to indicate there's no reason to go further on it. What would your response be to that argument? Well, I disagree that, I mean, it's one thing to use common sense, but I don't think you can use common sense to credit one person's testimony or one person's credibility over another without holding an evidentiary hearing. So common sense will go a certain distance, but on issues of credibility you feel there has to be a hearing. Certainly. I don't know if I ever got an answer to my query whether there's some possibility that you're going to subpoena this witness. We'll try the best we can. We know where she is. We know what town she lives in. Her father lives there. All right, okay. Do you want to save a minute for rebuttal? I would, Your Honor. Thank you. Please proceed. May it please the Court. Gary Sussman, appearing for the United States. The defendant's raised a number of issues in his brief in this Court, but really there are two primary issues. He's only argued one, too. Right. Those two issues are whether he received ineffective assistance of counsel at trial and whether the district court erred in denying his motion for relief without an evidentiary hearing. Since that was the focus of the argument this morning, I'd like to turn to that first. This Court has held in both Watts and Shaw that a hearing is not automatically required every time a defendant files a motion for relief under 2255. Whether a holy hearing is committed to the sound discretion of the trial court, this Court affords trial courts wide latitude in making that decision. No hearing is required. Well, all right, but first of all, this is a direct conflict in evidence, which is unusual. Second of all, it's not totally – I mean, I can conceive of other reasons why he would say that. The most obvious one is he doesn't want to be found to have committed ineffective assistance of counsel. It's bad for his reputation. So there's a reason why he would say something that wasn't so. The lawyer. Oh, I see. So why isn't – in other words, it's certainly not a slammed, unconvinced conclusion that the lawyer would not say something that wasn't so. Lots of lawyers have reasons to say things that aren't so with regard to ineffective assistance because it's bad for them. Well, this was the same district judge that presided over the trial in this case. Okay. And he saw the attorney in trial. He saw the defendant in trial. He saw all of the evidence. He heard all the – But he didn't hear anything about this because this all went off offstage. Right. He didn't hear Ms. Scarlett. Pardon me? He did not hear Ms. Scarlett. Ms. Scarlett did not testify. Yeah, and that's the issue. And then the judge reasons why there's no need for hearing, but he makes a credibility determination in doing so. Have we ever held that in a situation such as this, although the judge can use his common sense, the judge can make a credibility determination based upon affidavits? Have we ever held that? Yes. Not in exactly the same circumstances, but in both Shaw and in Watts, this Court has held that even where credibility is at issue, the district court can resolve a 2255 petition on affidavits and documents and the entire record before him where he can – where he can conclusively resolve a credibility issue based on the entire record before him. And that, I would submit, Your Honors, is what happened in this case. Both parties filed – If conclusively decided on the basis of documentary testimony evidence of the record, that is, if he can say that he can take the position that it's been conclusively decided based upon these notes, then he doesn't have to have an evidentiary hearing. Why do we have that here? Well, what we have here is lengthy, detailed legal memoranda that were submitted. We have affidavits. We have declarations. But they're in conflict. There's a direct conflict. There are some conflicts, but there are also some things that would allow the district judge to credit one affidavit over another. For example – But the reason he gave – What about responding to what I said? The reason he gave is he can't conceive of a reason. I gave you a reason. What's wrong with that reason? I mean, I conceived of a reason, so is that the end of – therefore, his common sense is not adequate. Well, I suppose that a creative mind can come up with an alternative. That's not very creative. That's very uncreative. I think a creative mind can come up with an alternative explanation for just about anything. All right. But in this instance, it's not very creative. It's not very unusual to see lawyers testify essentially against their clients on an effective assistance claim because it's not a good thing for a lawyer to be bound to have committed an ineffective assistance claim. I'm curious. What we're dealing with here is an interaction between the lawyer and Renee Scarlett, and the lawyer's investigator, and all of the facts and all of the circumstances that led up to his decision not to put her on the stand. Now, counsel set forth his reasons in detail in his affidavit. The defendant in his affidavit countered some of those and provided what he felt were alternative explanations for that. However, the conflicts don't necessarily mean, number one, that you could not credit her. It wasn't an explanation. The defendant said that something different happened, that in fact Scarlett said that she was sent away and not that she came and asked to not testify. That's what the defendant says Scarlett told her. But we haven't heard from Scarlett.  We don't know what Scarlett was going to say. We didn't have an evidentiary hearing, so we haven't heard from Scarlett. Well, we don't have a statement from Scarlett. We don't have an affidavit from Scarlett. We don't have a deposition from Scarlett. And if we had a hearing, we could subpoena Scarlett. Maybe, if we could find Scarlett. But counsel's investigator went out and tried to find her and spoke with her on the phone. And she didn't want to come forward of her own free will, which is understandable. Which is understandable. But if she comes in, if she's subpoenaed. But what did she say to the investigator? Originally? No. This last time. Well, she originally agreed to meet with the investigator and then canceled the meeting. But what did she say to her? So far as I know, she said absolutely nothing to her. Because there is nothing in the investigator's affidavit of any substance relating to what Renee Scarlett said. So at this point, we are left with a complete void as to whether, A, whether Renee Scarlett would cooperate and testify. As the district court found, it's pure speculation that she would make herself available for service of the subpoena. That she would cooperate. That she would testify. And if so, what she would do. Isn't it clear that she did come to court on one occasion when she thought she was going to testify? She did. And at that point, she came to court because she had been cooperating with defendants, with defense investigators. Okay. So there is evidence that she'll come to court. Now, there's a difference of opinion of what happened when she came to court. The lawyer says that she changed her mind and her testimony will be adverse to defendants. There's evidence in the record that she says, no, I wasn't going to change it. I was going to testify the way I indicated. Now, how do we get over that clear conflict? How do we assess the credibility? How can we say that it's conclusively decided on the base of the documentary testimony and evidence that we don't need to assess that credibility determination? Well, one thing the district court could have done was to look at the internal inconsistencies in defendants' own affidavit. For example, he says in his affidavit that he was relying on assurances from counsel that Renee Scarlett was going to testify when he decided first to go to trial as opposed to pleading guilty, and second is whether or not to testify himself. Yet elsewhere in his affidavit, he says before trial, before trial, counsel and his investigator told him that they were concerned about Renee Scarlett and the possibility she might change her story and testify differently. He wasn't given assurances, as he says in one part of his affidavit. He was given warnings. And yet it was him who insisted that she be brought in as a witness. That's right. He was completely convinced that Scarlett was going to testify what she said she testified to. Right. And then when he talks about the decision as to whether or not to plead guilty as opposed to go to trial, elsewhere in his affidavit, he maintains to this very day his factual innocence. There is no basis on which he could come in and plead guilty and no basis on which the district court could accept a guilty plea when he says the gun wasn't mine, I didn't know it was there, I had no idea it was there, and I'm not guilty. Is there sufficient in the affidavits we have before us as to the position Scarlett, he claimed Scarlett was going to take, she would testify the way she indicated she would? There is nothing in the affidavits about what Scarlett was going to say other than what counsel says that she told him mid-trial, the very first time in the middle of trial, when it became clear to counsel that he was dealing with a turncoat witness, and the double layer hearsay that we're dealing with as to what defendant claims she said to him. Well, now, there is something in the record. I thought that he said the day she got sent away, she came to talk to him that evening and said she got sent away, contrary, like a different story from the lawyer's version, that he made a judgment to send her away because she said she wasn't going to help. So, it doesn't seem to me it's a very good argument about it being hearsay when the issue is whether there should have been a hearing or she could be subpoenaed. But let me ask this. How long would it take in this kind of trial practice if the judge had held an evidentiary hearing and Thomas testified and the lawyer testified and Ms. Scarlett testified? Do you think such a hearing could be handled in an hour and a half or in a length of time that would be less than the time that was spent briefing and arguing this issue? There's no question in my mind about that. Yeah, so, I mean, why shouldn't there have been a brief evidentiary hearing? Scarlett would either show up or not. If she showed up, she'd either support Thomas or not. If Thomas would have his say, the lawyer would have his say, the judge would make a finding, and that would be it. In perfect 2020 hindsight, would it have been easier to resolve this quickly in a hearing? Absolutely, it would have. You also could have conceded it when she got the briefs and said, let's go back and have our hearing. Well, the district judge considered all of the material before him. He presided at the trial. He had the affidavits, the declarations, everything. He looked at it. He felt that there was enough there for him to resolve the claims on the merits without resorting to a full evidentiary hearing. It's well argued. We've got your argument in hand. The time is up. I think unless one of the judges has a further question. Mr. Sussman? Thank you. Thank you very much for your argument. And I'll say I, for one, would never fault the government for arguing its case rather than conceding and asking for a hearing when there's an appeal in a case like this. It's a very close case. Appellant, you have one minute. I actually have nothing to add unless the court has other questions. Any questions? I think we've done it. We really appreciate the quality and timeliness of counsel's argument here. We applaud both sides. The next case that we have, Thomas v. U.S., is submitted on the briefs. And I think after that it's U.S. v. Moreno-Hernandez. Is that right? U.S. v. Moreno-Hernandez. Oh, I'm sorry. Yeah, I was looking on the wrong page. The next case is Carla Sweet v. Tiger, Tualatin School District. Marsha has the question. Now, this one's 20 minutes. You're okay with that? Marsha? It's 20 minutes each side. You're okay with that? This case is set for 20 minutes for each side. And we would like to hold each side to it.
judges: Wallace, Gould, Berzon